IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 5:17-cr-00012 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| CODY LAWRENCE NORTHCRAFT | ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Defendant Cody Lawrence Northcraft, proceeding pro se, filed a motion for compassionate release. (Dkt. No. 49.) The government responded in opposition (Dkt. No. 53), and Northcraft filed a pro se reply (Dkt. No. 56). The Federal Public Defender was appointed to represent Northcraft but has not filed anything on his behalf.

The court finds that a hearing is not necessary to resolve Northcraft's motion, which will be denied for the reasons stated below.

I.  BACKGROUND

Northcraft was indicted on May 16, 2017, for conspiracy to distribute and to possess with the intent to distribute 1,000 grams or more of heroin and for possession of a firearm in furtherance of drug trafficking. On July 20, 2017, Northcraft waived indictment and agreed to be charged by an information charging him with conspiracy to distribute and to possess with the intent to distribute 1,000 grams or more of heroin, possession of a firearm in furtherance of drug trafficking, and distribution of heroin resulting in serious bodily injury. Northcraft pleaded guilty to the lesser-included offense of conspiracy to distribute and to possess with the intent to distribute 100 grams or more of heroin, possession of a firearm in furtherance of drug trafficking, and distribution of heroin. The plea provided for a range under Federal Rule of Criminal Procedure 11(c)(1)(C) of 240 to 300 months, or if Northcraft cooperated, 180 to 240 months.

Northcraft was part of a larger and broader network of heroin distribution in and around Winchester, Virginia, supplied from Baltimore. As part of the drug conspiracy, he distributed heroin to T.A.C. in 2014, which resulted in the death of T.A.C. in the home where Northcraft was residing. He had been warned just hours earlier by another drug customer that the particular batch of heroin was very strong, but he ignored that warning. (PSR ¶ 8, Dkt. No. 47.) He continued dealing heroin after T.A.C.'s death.

Northcraft was a significant dealer in the Winchester area. He sold thousands of individual doses of heroin, each with the potential to be fatal to its user. During the course of the drug conspiracy, Northcraft had at least 12 different regular customers and employed a network of sub-distributors, drivers, and middlemen to funnel heroin from his sources of supply in Baltimore to his customers in Winchester. After brief periods of incarceration, Northcraft repeatedly returned to distributing controlled substances. In fact, Northcraft was on state supervision at the time he committed his offenses. Also, despite being caught in 2011 with drugs and guns, and forfeiting those weapons he possessed illegally, defendant traded heroin for firearms on two occasions in March and April. (PSR ¶ 12.)

Defendant's persistence continued after his arrest in 2017. Anticipating his arrest for violation of his state probation supervision, defendant carried 3.5 grams of heroin on his person into the federal courthouse for his initial appearance, and he carried it on his person into custody in the Central Virginia Regional Jail. (PSR ¶ 15.) Once there, he distributed that heroin to other inmates, and D.M., one of those inmates, overdosed and had to be revived with Narcan.

On November 7, 2017, the undersigned judge sentenced Northcraft to a total term of 204 months imprisonment, 144 months for the drug distribution counts followed by 60 months to be

served consecutively for the firearm possession charge. Northcraft is currently incarcerated at FCI Hazelton and is projected to be released on October 12, 2031.[1]

Northcraft suffers from hypertension. He also has a skin wound diagnosed as MRSA (staph infection). Northcraft received the first dose of the Pfizer COVID-19 vaccine on March 9, 2021, and the second dose on March 30, 2021.

The victims of Northcraft's crimes oppose his release. (Exs. B and C, Dkt. Nos. 53-2, 53-3.)

## II.  ANALYSIS

### A.  Compassionate Release

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

Thus, after considering any applicable § 3553(a) factors, if the court finds extraordinary and compelling reasons warrant a reduction and if it finds a reduction consistent with any applicable Sentencing Commission policy statements, it may reduce a term of imprisonment. However,

---

[1] *See* https://www.bop.gov/inmateloc/ (last visited May 13, 2022).

"the Commission has yet to issue a policy statement that applies to motions filed by defendants [rather than motions filed by BOP] under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)). *See also United States v. Hargrove*, 30 F.4th 189 (4th Cir. 2022). The court, may, nonetheless, look to U.S.S.G. § 1B1.13 for guidance. *McCoy*, 981 F.3d at 282 n.7.

"A defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Ferguson,* No. 515CR00018KDBDSC1, 2020 WL 5300874, at *2 (W.D.N.C. Sept. 4, 2020). *See also Hargrove,* 30 F. 4th at 195 (noting the information provided by the inmate "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release."); *United States v. Brewington*, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019). *See also United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123 (E.D. Va. Aug. 18, 2020) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005) (defendant bears burden as party seeking relief absent statutory guidance to the contrary)). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t).

**B. Exhaustion**

As noted above, while the First Step Act changed § 3582(c)(1)(A) to allow a prisoner to bring a motion on his own behalf, the statute still includes an exhaustion requirement. The court has previously found that § 3582's exhaustion requirement is not a jurisdictional bar but is a claims-processing rule that may be waived. *See United States v. Brown*, Criminal No. 7:19-cr-

00036, 2020 WL 4506798, at *3 (W.D. Va. Aug. 5, 2020). Here, Northcraft's administrative request for release was denied (Dkt. No. 53-4), and the government does not contest that Northcraft has exhausted his administrative rights within the Bureau of Prisons. Therefore, the exhaustion requirement does not stand in the way of granting relief to Northcraft.

### C. Extraordinary and Compelling Reasons

Because an inmate is not eligible for compassionate release in the absence of extraordinary and compelling reasons, *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), the court looks to whether Northcraft has provided such reasons. The fact that COVID-19 exists and that there is a possibility that someone may contract it in a prison is insufficient, in and of itself, to grant a motion for compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Rather, in the context of COVID-19,

> the threshold questions are whether [the inmate] has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See High*, 997 F.3d at 185 (explaining that arguments for compassionate release "based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19").

*United States v. Youngblood*, 858 F. App'x 96, 98 (4th Cir. 2021). *See also United States v. Harper*, Criminal Action No. 7:18-cr-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020).

Northcraft stresses that he has had MRSA for a significant time and that it has not been treated adequately. To the extent Northcraft wishes to assert a claim under the Eighth Amendment or a claim for medical malpractice regarding MRSA, his remedies are not through the compassionate release procedure. *See United States v. Robertson*, 2021 WL 1343049, *1 n.2 (W.D. Va. April 8, 2021); *United States v. Hartley*, 2020 WL 5550394, *1 (W.D.N.C. September

5

16, 2020) (and cases cited therein).  Therefore, the court will only address Hoback's arguments for compassionate release.

The government concedes that Northcraft has a medical condition, hypertension, that is listed by the Centers for Disease Control as creating a higher risk if Northcraft were to contract COVID-19.  Northcraft, however, has been vaccinated with two doses of an effective vaccine, and booster shots are available.  Furthermore, Hazleton FCI currently has no COVID-19 cases among inmates or staff.[2]  While he may still contract COVID-19, his risk of serious infection is reduced.  A risk of infection alone, is insufficient to show extraordinary and compelling reasons. *See, e.g.*, *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases and noting consensus of district courts that have ruled that receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances").

Given the above reasons and the lack of cases at Hazelton FCI, Northcraft cannot meet the extraordinary and compelling circumstances standard for compassionate release.  He has not shown a particularized susceptibility to the disease or a particularized risk of contracting the disease at his prison facility.

---

[2] *See* https://www.bop.gov/coronavirus (last visited May 16, 2022).

### D. Section 3553(a) Factors

Even if Northcraft could show an extraordinary and compelling reason for compassionate release, the sentencing factors, which the court now considers, do not warrant a sentence reduction. The relevant sentencing factors, found in 18 U.S.C. § 3553(a), include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense. to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to avoid unwarranted sentence disparities. The court considers these factors holistically, and no one factor is dispositive, *United States v. Kibble*, No. 20-7009, 2021 WL 1216543, at *4 (4th Cir. April 1, 2021), but the court should not release an inmate who poses a danger to another person or the community, U.S.S.G. § 1B1.13.

As discussed above, Northcraft was a major and persistent dealer of dangerous narcotics, and his conduct resulted in death and serious bodily injury. Northcraft's conduct also involved the use of firearms. Thus, the seriousness of Northcraft's offenses and the need to protect the public counsel heavily against early release. Northcraft also pled guilty to a lesser included offense, which allowed him to avoid the 240-month mandatory minimum for heroin distribution resulting in serious bodily injury. The need for deterrence and to avoid unwarranted sentencing disparities demand that Northcraft must serve far more of his sentence than currently served.

### III. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Northcraft's motion for

compassionate release (Dkt. No. 49) is DENIED. The clerk is directed to provide a copy of this order to Northcraft, all counsel of record, and the United States Probation Office.

    Entered: May 16, 2022.

*/s/ Elizabeth K. Dillon*
    Elizabeth K. Dillon
    United States District Judge